NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FULL PACKAGE MEDIA LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>HOMES OF THE RICH LLC, and KENNETH FORDER,<br><br>*Defendant*. | Civil Action No. 25-971<br><br>OPINION<br><br>December 31, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendants Homes of the Rich LLC and Kenneth Forder's Motion to Dismiss (ECF 15, "Motion" or "Mot.") Plaintiff Full Package Media LLC's Complaint (ECF 1, "Compl."). Plaintiff filed a brief in opposition to the Motion (ECF 18, "Opposition" or "Opp."). The Court has decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is **DENIED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

This action arises from Defendants' allegedly infringing use of Plaintiff's copyrighted photographs on Defendants' website. Plaintiff is a real estate media photography company headquartered in Dallas, TX that specializes in "images of luxury homes and aerial images."

---

[1] The facts and procedural history are drawn from the Complaint (ECF 1). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

1

(Compl. ¶ 1.)  Defendant Homes of the Rich LLC is a New Jersey limited liability company that owns and operates the website that used the copyrighted photographs, and Defendant Kenneth Forder, a New Jersey resident, is the owner, sole employee, and registered agent of Homes of the Rich LLC.  (*Id.* ¶ 2.)

Plaintiff represents that between February 28, 2017, and March 7, 2024, a photographer named Thomas Crosson captured the photographs at issue in this case (the "Copyrighted Photographs").  (*Id.* ¶¶ 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31.)  Plaintiff also represents that between April 24, 2024, to April 28, 2024, it registered these photographs with the United States Copyright Office.  (*Id.* ¶¶ 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32.)  Plaintiff alleges that between March 19, 2017 and March 27, 2024, Defendants copied and posted the Copyrighted Photographs to its website, social media feeds, or both.  (*Id.* ¶¶ 35-47.)  Plaintiff alleges that "Defendants are not and have never been licensed to use or display Plaintiff's Copyrighted Photographs[,]" and that "Defendants never contacted Plaintiff to seek permission to use Plaintiff's Copyrighted Photographs in connection with its website or for any other purpose."  (*Id.* ¶ 48.)  Plaintiff contends that Defendants found the Copyrighted Photographs on the internet and copied them for use on their website without contacting Plaintiff to inquire about licensing the images.  (*Id.* ¶ 49.)  Plaintiff alleges that it first discovered Defendants' allegedly infringing use of the Copyrighted Photographs on or about March 29, 2024, and that upon making the discovery, Plaintiff sent written notice to Defendants that their use of the images was unauthorized.  (*Id.* ¶¶ 50-51.)  Plaintiff represents that, as of the date of the Complaint (February 4, 2025,) the parties have "been unable to negotiate a reasonable license for the past infringement of Plaintiff's Copyrighted Photographs."  (*Id.* ¶ 51.)

As mentioned, Plaintiff initiated this action by filing the Complaint on February 4, 2025. Plaintiff asserts one count of copyright infringement under 17 U.S.C. § 101 *et seq.*, and it seeks relief in the form of declarations that Defendants willfully infringed Plaintiff's copyrights in the Copyrighted Photographs, actual damages and disgorgement of profits or statutory damages of $150,000, costs of suit and attorneys' fees, prejudgment interest, and an injunction barring Defendants from continuing their alleged infringement. (*Id.* ¶¶ 62(a)-(g).)

On April 14, 2025, Defendants filed the Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* Mot.) In the Motion, Defendants do not dispute that they used Plaintiff's Copyrighted Photographs. Instead, Defendants contend that the Complaint should be dismissed because their use of the Copyrighted Photographs was fair under 17 U.S.C. § 107. (*Id.*) On April 25, 2025, Plaintiff filed the Opposition to the Motion to Dismiss, arguing that Defendants' use of the Copyrighted Photographs did not constitute fair use. (*See generally* Opp.) Defendants did not submit a reply brief in support of their Motion.

II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016)

(internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. ANALYSIS

"To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). To prove unauthorized copying, a plaintiff must show that the defendant (1) had access to the plaintiff's work, and (2) that the "the original and allegedly infringing works share substantial similarities." *Id*. To succeed in such a claim, a plaintiff must be able to demonstrate to the Court that the substantial similarities are predicated on protectable elements of the original work. *Dam Things from Denmark, a/k/a Troll Co. ApS, v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002). Ideas and facts are not protectable elements of an original work. *Feist Publ'ns., Inc. v. Rural Tel.*

4

*Serv. Co.*, 499 U.S. 340, at 349-350 (1991).  Nor are *scènes à faire*, which are "incidents, characters or settings which are as a practical matter indispensable in the treatment of a given topic." *Whelan Assocs. Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1236 (3d Cir. 1986)**.**

The parties here do not dispute that Defendants copied Plaintiff's Copyrighted Photographs without prior authorization, but Defendants assert that their use of the Copyrighted Photographs is protected by the affirmative defense of fair use.  Section 107 of the Copyright Act provides that:

> the fair use of a copyrighted work, including such use by reproduction in copies […], for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  According to the Supreme Court, the task of determining whether the use of a copyrighted work is fair "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).  "Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *Id.* at 577.

In their Motion, Defendants argue that all four factors of the fair use analysis should fall in their favor.  First, they contend that they did not "merely republish the photographs for their aesthetic value; rather Defendants used the photographs as part of informational articles about the properties depicted" because they published the Copyrighted Photographs on "a news and information website devoted to providing the public with information about luxury real estate

properties." (Mot. at 3-4.) In support of this claim, Defendants cite *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570 (S.D.N.Y. 2020), in which the court found that defendants had fairly used plaintiff's photograph in a news article, and *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014), in which the court found that defendants had fairly used plaintiff's audio recordings in a news article. Second, Defendants argue that "[t]he photographs at issue are primarily factual in nature, depicting real estate properties as they actually exist[,]" which "favors a finding of fair use." (Mot. at 6 (citing *N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 620 (S.D.N.Y. 2015).) Third, Defendants argue that, "while [they] used entire photographs rather than portions, using the entire photograph was necessary to fulfill Defendants' informational purposes of educating the public about the architectural and design features of the properties." (*Id.* at 7.) Defendants cite *Clark v. Transportation Alternatives, Inc.*, No. 18-9985, 2019 WL 1448448, at *4 (S.D.N.Y. Mar. 18, 2019) for the proposition that using anything less than the entire photographs would have "produced impractical results" that would not have "adequately communicated the intended point." (*Id.*) Finally, Defendants argue that their "use of the photographs does not compete with or supplant the market for Plaintiff's photographs" because "Plaintiff is in the business of creating and licensing real estate photographs to real estate agents, brokers, and property owners for marketing purposes." (*Id.* at 8.) Defendants contend that "their use of the photographs in an informational context does not usurp the market for Plaintiff's real estate photography services[,]" as "[m]arket harm caused by effective criticism that suppresses demand is no cognizable." (*Id.* at 9 (citing *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1107 (C.D. Cal. 2015).)

In its Opposition brief, Plaintiff argues that Defendants' use of the Copyrighted Photographs is not transformative, but rather purely commercial in nature. Plaintiff contends that

6

the correct framing of the first prong of the fair use analysis is "whether Defendants gained a commercial advantage, either directly or indirectly, as a consequence of using [the] Copyrighted Photographs without paying the customary licensing fee," pointing to *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). (Opp. at 10.) Regarding the second fair use factor, Plaintiff disputes Defendants' characterization of the Copyrighted Photographs as "factual" in nature, arguing that the photographs "should not be analyzed based solely on the identity or location of the subject; rather the focus should be on the various creative and original elements comprising the work itself." (*Id.* at 12 (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1120 (9th Cir. 2018).) For the third fair use factor, Plaintiff references two cases involving the work of artist Richard Prince—*Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013) and *Graham v. Prince*, 265 F. Supp. 3d 366 (S.D.N.Y. 2017)—in which "defendant's use of plaintiff's work involved more than 'cropping,' yet even still the courts declined to hold that the third factor weighed in favor of the defendant[,]" to distinguish from the instant case, in which "Defendants did not crop or alter [the] Copyrighted Photographs in any way." (*Id.* at 13-15.) For the final fair use factor, Plaintiff offers that "Defendants' use [of the Copyrighted Photographs] presents the possibility of entirely usurping Plaintiff's licensing market." (*Id.* at 16.) In support, Plaintiff offers a string of cases from various circuits and districts around the country in which courts have found the fourth fair use factor to weigh against the defendant where the use of the copyrighted material negatively affected plaintiff's access to the licensing market for the material.[2] (*Id.*)

The Court discusses each factor in turn.

---

[2] *TCA Television Corp. v. McCollum*, 839 F.3d 168, 186 (2d Cir. 2016); *House of Bryant Publications, LLC v. A & E Television Networks*, No. 09-0502, 2009 WL 3673055, at *9 (M.D. Tenn. Oct. 30, 2009); *Richard Anderson Photography v. Brown*, No. 85-0373, 1990 WL 538929, at *2 (W.D. Va. Apr. 16, 1990)

7

### a. Purpose and Character of Use

The main concern of the inquiry into the purpose and character of the use of copyrighted material is, "in Justice Story's words, whether the new work merely 'supersede[s] the objects' of the original creation…or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579 (citing *Folsom v. Marsh*, 9 F.Cas. 342, 348 (No. 4,901) (CCD Mass. 1841)). Although news reporting is one of the possible fair uses contemplated by Congress in the text of the Copyright Act, "a news reporting purpose by no means guarantees a finding of fair use." *Swatch*, 756 F.3d at 85.

Defendants argue that their use of the Copyrighted Photographs transforms the works by "contextualiz[ing] the photographs as part of a broader informational purpose of educating the public about notable properties, their architectural features, and real estate trends." (Mot. at 6.) In support of this argument, Defendants first compare this case to *Walsh*, 464 F. Supp. 3d 570, in which the court granted defendant's motion to dismiss on the basis of fair use. In *Walsh*, defendants—operators of a hip-hop news media website—published an article that contained a social media post from the rapper Cardi B which featured plaintiff's copyrighted photograph of the rapper. *See generally Walsh*, 464 F. Supp. 3d 570. The court found that the first fair use factor favored defendant "because the article uses the Photograph for an entirely different purpose than originally intended." *Id.* at 581. "Thus, Defendant's inclusion of the Photograph as part of the Post was not simply to 'present the content of that image'[…] i.e., the purpose the Photograph was created for[.] Rather, Cardi B's making and dissemination of the Post, not the image that was posted, was 'itself the subject of the story.'" *Id.* at 582 (citing *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016) and *Barcroft Media, Ltd. v. Coed*

8

*Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017)).  Defendants then invoke *Swatch*, a case in which defendant—operator of a business and financial news media platform—published plaintiff's copyrighted audio recording of an earnings call it held with investors and shareholders. 756 F.3d at 78-79.  The Second Circuit found that the first fair use factor favored defendants because: (1) "Bloomberg was able to convey valuable factual information that would have been impaired if Bloomberg had undertaken to alter the speech of the Swatch Group executives by interjecting its own interpretations[;]" and (2) "Bloomberg's use did no harm to the legitimate copyright interests of the original author."  *Id.* at 85.

      The instant case differs from *Walsh* and *Swatch*.  First, Defendants do not use the Copyrighted Photographs for "an entirely different purpose than originally intended."  *Walsh*, 464 F. Supp. 3d at 581.  Defendants' stated aim in republishing the works is to serve "a broader informational purpose of educating the public about notable properties, their architectural features, and real estate trends."  (Mot. at 6.)  While worded differently, this purpose "is exactly the same use made by Plaintiff's clients to feature, market, and ultimately sell the respective properties depicted in [the] Copyrighted Photographs[.]"  (Opp. at 7-8.)  Both uses promote the features of the properties to the public.  "For a use to be fair, it must be productive and must employ the quoted matter in a different manner or for a different purpose from the original."  *Cariou*, 714 F.3d at 706 (quoting Pierre N. Leval, *Toward a Fair Use Standard,* 103 Harv. L.Rev. 1105, 1111 (1990)). Defendants' use employs language that describes the properties depicted in the Copyrighted Photographs, but such description does not create new information so much as it recapitulates the information contained in the Copyrighted Photographs.  The information about pricing, location, and square footage that Defendants include in the allegedly infringing articles similarly presents and publicizes existing information about the properties rather than adding new information or

9

context sufficient to "transform" the Copyrighted Photographs for the purposes of the first fair use factor.

Second, the commercial nature of Defendants' use stands to disrupt the legitimate copyright interests of the original author because Defendants "[stand] to profit from exploitation of the copyrighted material without paying the customary price." *Harper*, 471 U.S. at 562. Defendants profit from using the Copyrighted Photographs by generating content for their website, which in turn generates revenue to Defendants by way of advertisements and pageviews. (Opp. at 5-8.) Moreover, Defendants admit that their use is commercial. (Mot. at 6.)

For these reasons, the purpose and character of Defendants' use of the Copyrighted Photographs weighs against a finding of fair use.

### b. Nature of the Works

The second fair use factor requires the Court to determine if the Copyrighted Photographs are factual or fictional in nature. "The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper*, 471 U.S. at 563 (citing Gorman, *Fact or Fancy? The Implications for Copyright*, 29 J. Copyright Soc. 560, 561 (1982)).

Here, Plaintiff argues that the Copyrighted Photographs "not just mere snapshots of a space[,]" but rather "images which involved numerous creative choices including timing, lighting, angle, composition, and others[.]" (Opp. at 11-12.) Defendants contend that "[t]he photographs at issue are primarily factual in nature, depicting real estate properties as they actually exist[,]" and that "[w]hile photography involves creative choices" regarding the factors enumerated by Plaintiff, "the photographs here primarily serve an informational purpose—to document and showcase the properties' appearances." (Mot. at 6.)

The Court finds that this factor counsels neither in favor of nor against a finding of fair use. The works unquestionably involve the sorts of creative decisions that are the classic hallmarks of copyrightable expression, but they are also clearly factual depictions of the properties as they exist. These diametrically opposed facts effectively neutralize one another.

### c. Substantiality of Use

The third factor concerns whether Defendants used all or part of the works at issue, and additionally "requires courts to consider…whether the portion of the copyrighted material was 'the heart of the copyrighted work.'" *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 642 (4th Cir. 2009) (citing *Sundeman v. The Seajay Soc'y, Inc.*, 142 F.3d 194, 205 (4th Cir. 1998)). Defendants do not dispute that they used all of the Copyrighted Photographs without cropping or editing them, but they argue that doing so "was necessary to fulfill Defendants' informational purpose of educating the public about the architectural and design features of the properties." (Mot. at 7.) Plaintiff argues that Defendants' use of the entirety of the Copyrighted Photographs serves to "reinforce the principle that courts should not accord fair use protection to profiteers who do no more than add a few silly words to someone else's song." (Opp. at 15 (citing *Campbell*, 510 U.S. at 598).)

Because Defendants used the entirety of the Copyrighted works in service of a use that ultimately was not transformative, as described *infra*, the Court finds that the amount and substantiality of the use counsels against a finding of fair use.

### d. Market Effect

The final fair use factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant…would result in a substantially

adverse impact on the potential market' for the original." *Campbell*, 510 U.S. at 590 (citing M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.05[A] [4], p. 13–102.61 (footnote omitted)). The Court "must take account not only of harm to the original but also of harm to the market for derivative works." *Harper & Row*, 471 U.S. at 568.

In their Motion, Defendants argue that their "use of the [Copyrighted Photographs] does not compete with or supplant the market for Plaintiff's photographs" because "Plaintiff is in the business of creating and licensing real estate photographs to real estate agents, brokers, and property owners for marketing properties[,]" whereas "Defendants, on the other hand, operate an informational website about luxury real estate that reports on notable properties, without offering any competing photography services." (Mot. at 8.) In support of this argument, and to frame the Court's analysis, Defendants cite *NXIVM Corp. v. Ross Inst.* for the proposition that the fourth fair use factor is concerned with "whether the secondary use usurps the market of the original work." 364 F.3d 471, 481–82 (2d Cir. 2004). They also note that "[m]arket harm caused by effective criticism that suppresses demand is not cognizable." *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1107 (C.D. Cal. 2015).

In Plaintiff's view, the inquiry under this factor is "whether the defendant's version of the photo can serve as a 'market substitute' for the original." (Opp. at 15-16 (citing *Campbell*, 510 U.S. at 587).) Plaintiff offers that "Defendants' position would mean that potential licensees of the [Copyrighted Photographs] will no longer be incentivized to pay a licensing fee to use [the] Copyrighted Photographs" since "they could simply copy for free the version published by Defendants to their website and social media[.]" (*Id*. at 16.) Plaintiff then cites a string of cases in which courts around the country found that the final factor worked against a finding of fair use where the allegedly infringing party used the copyrighted material at use for largely the same

12

purpose as originally intended. (*Id*. at 16-17.) Finally, Plaintiff argues that Defendants have not met their burden of establishing through evidence that their use was fair under this factor. (*Id*. at 18.)

The Court finds that Defendants' use does stand to usurp the licensing market for Plaintiff's Copyrighted Photographs because Defendants use the works for the same purpose for which they were originally intended. Similar to the analysis regarding the first factor, Defendants' attempts to differentiate their "educational" use from the original intended use of marketing the properties depicted in the Copyrighted Photographs falls flat, as the two uses are effectively one and the same. Defendants' attempt to cast their use as "commentary" is similarly unavailing, because the cases they cite undermine their argument. For example, while *Equals Three* indeed sets out that "[m]arket harm caused by effective criticism that suppresses demand is not cognizable[,]" in the very next sentence, the court notes that "[i]nstead the only kind of harm cognizable is market substitution—i.e. where the new work diminishes demand for the original work by acting as a substitute for it." 139 F. Supp. 3d at 1107. The instant case is just such a scenario, and as such, the Court finds that Defendants use does create a negative market effect for the licensing market of the Copyrighted Photographs that counsels against a finding of fair use.

## IV. CONCLUSION

For the reasons articulated herein, the Court finds that, taken together, the four fair use factors counsel against a finding that Defendants use of the Copyrighted Photographs in this case was fair. Accordingly, Defendants Motion to Dismiss is **DENIED**. An appropriate order follows.

/s/ *Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Jessica S. Allen, U.S.M.J.

13

Parties